# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| CAROLYN CULLEY-BROWN, an individual, | Civil Action No. 5:21-cv-00094-JPB |
| Plaintiff, | Hon. John Preston Bailey |
| v. | |
| AMERICAN PETROLEUM PARTNERS, LLC, n/k/a HIGH ROAD RESOURCES, LLC, a Delaware limited liability company; AMERICAN PETROLEUM PARTNERS OPERATING, LLC n/k/a HIGH ROAD OPERATING, LLC, a West Virginia limited liability company; and AMERICAN PETROLEUM PARTNERS HOLDINGS, LLC n/k/a/ HIGH ROAD RESOURCES HOLDINGS, LLC, a Delaware limited liability company, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DEFENDANT AMERICAN PETROLEUM PARTNERS OPERATING LLC'S PRODUCTION OF DOCUMENTS WITHOUT <u>IMPROPER REDACTIONS AND FOR CASE EXTENSION</u>**

## I. INTRODUCTION

Defendant High Road Operating, LLC's ("HRO") eleventh hour attempt to entirely withhold probative evidence with improper unilateral blanket redactions should not be permitted by the Court. After months of meet and confer conferences regarding methods of redaction, including an *in camera* review of the responsive documents at issue, HRO has entirely reneged on the parties' prior agreements and produced undeniably relevant documents with wholesale deletions of data that materially alter the evidence. It is well-established throughout federal circuits that such unilateral redactions are improper and not supported by the Federal Rules. HRO's

improper redactions[1] not only materially alter the evidence in HRO's favor, but also eliminate necessary contextual information evidencing HRO's conduct. HRO's assertion that it is withholding this relevant discovery because it is "confidential business information" cannot be countenanced. The Court entered the Agreed Protective Order (ECF 57) which issues specific procedures for producing purportedly confidential business information in discovery and does not allow redaction. Moreover, HRO waived its ability to withhold information based on confidentiality as it failed to assert any privilege or objection based on confidential business information in its discovery responses.

HRO represented as far back as February that it would minimize any needed redactions to personally identifying information ("PII"), and then delayed production until the close of discovery, depriving Plaintiff of her ability to fairly prosecute her claims. Plaintiff will be severely prejudiced absent HRO's production of highly probative evidence without redactions. HRO's late production and withholding of documents until the eleventh hour is clearly an attempt to evade production of highly probative evidence, and an abuse of the discovery process that severely prejudices Plaintiff's preparation for dispositive motions and trial. HRO's dilatory conduct is precisely the type of gamesmanship that warrants sanctions under the discovery rules.

Plaintiff respectfully requests that the Court compel HRO to produce documents without improper redactions, extend the case schedule to allow for resolution of this discovery dispute, and levy sanctions against HRO for its blatant abuse of the discovery process.

## II. FACTUAL BACKGROUND

### A. Plaintiff Attempted to Cooperate with HRO Throughout Discovery and HRO Repeatedly Represented that it would Minimize Any Redactions.

On January 20, 2022, Plaintiff served her First Set of Requests for Production of Documents and Proposed Search Terms and Custodians for the discovery of electronically stored

---

[1] Exemplar documents produced by HRO with blanket deletions of data in hundreds of rows of cells are filed herewith as Exhibit N. HRO carried out blanket deletions on approximately 150 documents. At the Court's request, Plaintiff can submit all of the redacted document produced by HRO. However, an *in camera* review of the unredacted version of the documents at issue may be more beneficial for context.

information ("ESI") on Defendant American Petroleum Partners Operating LLC n/k/a High Road Operating LLC ("HRO"). *See* Affidavit of Joy D. Llaguno ("Llaguno Aff.") ¶ 2; Exhs. A-B. On February 16, 2022, five (5) days before HRO's deadline to respond to the discovery requests, counsel for HRO contacted Plaintiff's counsel to meet and confer regarding HRO's proposals regarding ESI, including modified search terms and custodians, and to request an extension for HRO to serve it discovery responses. *See* Llaguno Aff. ¶ 3; Exh C.

Throughout February, the parties continued to meet and confer on the procedures for HRO's documents production. HRO's counsel proposed a procedure in which it would produce responsive emails without the attached files, based on HRO's representations that many of the attached documents may need to be redacted for personally identifying information. Plaintiff would then review HRO's production and choose the email attachments to be produced. Plaintiff's counsel agreed to the proposal in good faith, in order to streamline production and reduce any purported burden on HRO. *See id*. ¶ 4; Exh C.

During these discussions, Plaintiff's counsel specifically clarified that the redactions would be limited to personally identifying information ("PII") only, such as the names and tax parcel numbers of third party lessors, and HRO would not redact any other information as it may provide needed context and evidence of HRO's relevant business practices. *See id.* ¶ 5. HRO's counsel agreed and specifically stated in a memorializing email that "***Plaintiff and Defendant agreed to work together to minimize the amount of redaction required*** and to ensure that Plaintiff received all the discovery information to which she is entitled." *Id*. ¶ 5; Exh C, at p. 1. Thus, as early as February, HRO represented that it would minimize redactions in documents produced.

### B. The Parties Stipulated to and the Court Entered the Agreed Protective Order.

On March 3, 2022 the parties jointly moved for entry of an Agreed Protective Order, stipulating that the Protective Order "will facilitate discovery in this matter." ECF 56. The Court entered the Agreed Protective order on March 4, 2022. The Protective Order issues specific

procedures for the parties' production of information designated as confidential in discovery, and does not permit redaction. *See* ECF 57, attached hereto as Exh. D.

### C. The Email Attachments at Issue

On March 14, 2022, HRO served an initial document production of approximately 1,213 pages of documents. Defendants High Road Resources, LLC and High Road Resources Holdings, LLC produced approximately 111 pages of documents. *See* ECF 59-60. On April 5, 2022, the parties jointly moved for, and the Court granted, a brief extension of the discovery deadline, as the parties were still exchanging ESI despite the Parties' diligent efforts. *See* ECF 65.

Given the voluminous production of documents, Plaintiff reviewed Defendants' production as soon as reasonably practicable, and on April 26, 2022, Plaintiff sent HRO's counsel the list of selected email attachments to be produced to Plaintiff. *See* Llaguno Aff. ¶ 9; Exh. E. The email attachments at issue consist primarily of Excel spreadsheets and PowerPoint presentations that relate to Defendants' leasing and business practices.

After review of HRO's production of business records, on April 29, 2022, Plaintiff filed her Motion for Leave to Amend the Complaint to add a count for fraud based on the newly discovered evidence of HRO's systemic bad faith business practices. *See* ECF 68.

From in or about April 27 to May 4, 2022, Plaintiff's counsel met and conferred with HRO's counsel multiple times via phone and email regarding HRO's production of the email attachments. *See* Llaguno Aff. ¶ 11-12; Exh. F. On April 27, Plaintiff's counsel discussed with HRO's counsel specific methods of redacting personally identifying information only so that all other information could be produced. *Id.* at ¶ 12. The memorializing email reflects that "[t]he parties discussed various potential methods to simplify redaction, such as the ***deletion of spreadsheet columns with personally identifying information of third parties***." *Id.;* Exh. F (emphasis added). In addition, the parties acknowledged the prejudice to Plaintiff "in light of the upcoming discovery and dispositive motion deadlines" and HRO's estimated 2-3 week timeline for production, and "the parties discussed a tentative proposal where Plaintiff's counsel can view the requested unredacted native documents in person at the office of [HRO's] counsel and take

4

notes limited to the issues pertinent to this case to mitigate the prejudice to Plaintiff while [HRO] prepares the production." *Id.* HRO further represented that "APP anticipates producing the redacted email attachments on or about the ***second week of May***." *Id.*

### D. The May 4 *In Camera* Review of Unredacted Documents and the Parties Agreement to Only Redact Personally Identifying Information ("PII").

Thereafter, the parties agreed that Plaintiff's counsel would conduct the *in-camera* review of the unredacted documents on May 4, 2022 at counsel for HRO's office, so that Plaintiff could determine the contents of the documents to prepare for the upcoming dispositive motion deadline and determine redaction methods. *See* Llaguno Aff. ¶ 13; Exh. G. On May 3, 2022, the parties again discussed limiting redaction to personally identifying information only and HRO's counsel represented in an email, "[w]e are willing to discuss excluding non-identifying information from redaction [during the May 4 review], however doing so may prolong the time required for production." *See id.*

On May 4, 2022, Plaintiffs' counsel conducted the *in camera* review of the unredacted native documents at the office of HRO's counsel, and recorded notes regarding their contents. *See* Affidavit of Phillip C. Hook, Esq ("Hook Aff.") ¶¶ 2-4; Llaguno Aff. ¶ 14. When Plaintiff's counsel arrived at counsel for HRO's office, they met briefly with attorney Matthew Heiskell who stated that Plaintiff's counsel would primarily be conducting the document review with attorney Jordan Sengewalt and their paralegal Leah, while Mr. Heiskell conducted other work. *Id.* Plaintiff's counsel reviewed the email attachments at issue with Ms. Sengewalt and Leah, which consisted predominately of Excel spreadsheets and PowerPoint exhibits. *Id.*

As the parties reviewed the documents Ms. Sengewalt identified specific categories of personal identifying information ("PII") that she requested be redacted, such as the names of third-party landowners, their tax parcel numbers, deed book numbers, and lease numbers. Hook Aff., ¶ 5; Llaguno Aff., ¶ 15. During the first two hours of review, the parties specifically discussed and rehearsed numerous examples of how these categories of PII would be redacted by Leah (who represented that she would be managing the redaction process), without affecting other contextual

information in the documents. For example, the parties spent upwards of 30 minutes on a single excel spreadsheet discussing how to most efficiently redact PII from spreadsheet columns while still maintaining contextual information in other columns. Both Ms. Sengewalt and Leah confirmed that such targeted redactions were achievable, and Ms. Sengewalt tentatively agreed, pending Mr. Heiskell's confirmation, that all other information in the spreadsheets would not be withheld, and would be timely produced. Hook Aff., ¶ 5; Llaguno Aff., ¶ 15.

To streamline production, Plaintiff's counsel alternatively proposed production of the unredacted email attachments with confidential designations under the parties' Agreed Protective Order. HRO's counsel did not agree to this proposal. Hook Aff., ¶ 6; Llaguno Aff., ¶ 16.

After Plaintiff's counsel completed the document review with Ms. Sengewalt and Leah, Mr. Heiskell returned to the room where the parties discussed the agreed upon procedures for targeted redactions of PII. Hook Aff., ¶ 7; Llaguno Aff., ¶ 17. Leah showed Mr. Heiskell the methods the parties had discussed for targeted redactions by carrying out the same trial redaction process we had rehearsed earlier on sample spreadsheets. *Id.* Mr. Heiskell agreed to the targeted redactions, but noted that the process may take longer than the previous three-week estimate for production. *Id.* The parties agreed that if the targeted redactions could not be completed by May 20, the parties would potentially stipulate to an extension of dispositive motion deadlines or file a joint motion for a brief extension of the case schedule to allow for HRO's completion of the targeted redactions. *Id.* The parties further agreed that the redacted email attachments could be produced by HRO in batches in order to lower the burden on HRO. Hook Aff., ¶ 8; Llaguno Aff., ¶ 18. Plaintiff's counsel also agreed to provide a "priority" list categorizing the email attachments in the preferred order for production. *Id.*

To reduce the prejudice of preparing Plaintiff's dispositive motions without the benefit of HRO's production, and pursuant to the prior agreement of the parties, Plaintiff's counsel recorded notes as to information contained in the email attachments that were relevant to Plaintiff's claims, including without limitation, total unpaid bonus payment amounts for HRO's leases for landowners in multiple states, notations and category tags for other third-party leases such as "Able

to Pay: No", "Land Use Category: Must Have", as well as the approximate total number of late bonus payments owed by HRO to landowners. *See* Llaguno Aff., ¶ 19. The parties agreed that such notes would be permitted so long as they did not contain specific PII of third parties. *See id;* Exh. G (discussing note taking procedures). Ms. Sengwalt reviewed Plaintiff's counsel's notes during the May 4 review, and raised no issues with the notes regarding HRO's business practices as to other landowners since they did not contain PII, such as names or identifying tax parcel information. *Id.*

### E. HRO Reneged on the Parties' Agreement to Limit Redaction to PII After Plaintiff Relied on the Evidence in Support of Her Motion for Leave.

Plaintiff's May 4 review of the documents revealed bad faith systemic business practices as to hundreds of landowners. *See* ECF 85-1[2]; Llaguno Aff. ¶ 20. On May 18, 2022, Plaintiff filed her Reply in support of her Motion for Leave to Amend the Complaint, which referenced information revealed during the May 4 *in camera* review that further supported a claim for fraud. *See* ECF 85. The Reply and supporting Affidavit reflects that Plaintiff was relying on HRO's representations and believed in good faith that HRO would ultimately produce the documents at issue with redactions limited to PII. *See* ECF 85, pp. 1-2, fn. 1 ("HRO has yet to produce documents referenced here. HRO represented that it would complete production by May 25, 2022); *Id.*, fn. 2 ("Plaintiff can submit the documents referenced in the Reply to the Court after HRO completes production); ECF 85-1, p. 3, fn. 1 ("Plaintiff anticipates more detailed supporting evidence when HRO completes production.").

From May 16-17, 2022, the parties continued to meet and confer regarding HRO's production. *See* Llaguno Aff. ¶ 22; Exh. H. HRO represented that it could not confirm that production of the email attachments would be completed prior to May 20, 2022. *Id.* The parties acknowledged that HRO's production was necessary for Plaintiff to conduct the Rule 30(b)(6) deposition of HRO's corporate representative. *Id.* Accordingly, the parties ultimately agreed to file a joint motion requesting a brief extension of the discovery and case deadlines to "allow for [HRO]

---

[2] The referenced information in the Reply and supporting affidavit is not an exhaustive list of relevant evidence in the redacted documents, as Plaintiff does not have the benefit of HRO's production.

to complete their production of documents by May 25, 2022, and for Plaintiff to conduct the Rule 30(b)(6) deposition of HRO's corporate representative thereafter. *See id.* at p. 1.

On May 18, 2022, the parties filed their Joint Motion to Extend Discovery and Dispositive Motion Deadlines. *See* ECF 83. In the Joint Motion, the parties specifically stipulated that HRO would "complete production by May 25, 2022, and its Rule 30(b)(6) deposition can be continued to June 2, 2022" after HRO's production. *Id.* On May 19, 2022, the Court granted the Joint Motion. *See* ECF 86.

Despite HRO's representations, HRO failed to complete production by May 25, 2022 and Plaintiff was unable to prepare for and conduct the deposition of HRO's corporate representative on June 2. *See* Llaguno Aff. ¶ 24; Exh. I (HRO emails producing documents on May 25, May 27, and June 1, 2022).

### F. **HRO Produced Documents with Improper Unilateral Redactions.**

On May 25, 2022, HRO produced a portion of the requested email attachments, but contrary to HRO's agreements during the parties' comprehensive meet and confer process, HRO carried out blanket deletions of responsive information and did not limit the redactions to PII as previously agreed. *See* Llaguno Aff. ¶ 25; Exh N. In the Excel spreadsheets at issue, HRO deleted data in hundreds of cells which further altered even the produced data by breaking formulas and altering outputs. *See id.* Moreover, HRO did not produce all of the requested attachments that Plaintiff identified on April 26, 2022. *See id..* On May 26, 2022, Plaintiff's counsel sent a meet and confer email to HRO's counsel raising the issues of HRO's blatant misrepresentations and gamesmanship. *See* Exhibit J (meet and confer emails between counsel). In response, counsel for HRO disingenuously claimed that he "never represented Defendant would redact the spreadsheets in the manner you claim" and asserted that the information was "not relevant to Plaintiff's claims." *See id.*

HRO's assertion is a complete fabrication of the parties' prior agreements as the written communications between the parties as early as February, as well as the parties' conduct at the May 4 *in camera* review evidence HRO's representations and agreement to the targeted redaction

process agreed upon by the parties. *See* Llaguno Aff. Exh. J; *see also* Exhs. C, E, F-I. It would make no sense for the parties to go through the time-consuming process of conducting an *in camera* review of documents and specifically identify categories of personally identifying information and methods of redaction if HRO merely intended to blanket redact responsive information. *See id.* In fact, HRO represented that the targeted redaction would "prolong the time required for production," and HRO extended the anticipated time for production from "the second week of May" to May 25, 2022 for this reason. *Id.*; *Compare* Exh. F (April 27, 2022 email stating "[HRO] anticipates producing the redacted email attachments on or about the second week of May"), *with* Exh. G (May 3, 2022 email stating "excluding non-identifying information from redaction…may prolong the time required for production"), *and* Exh. H (HRO stating it would complete production by May 25, 2022). HRO's represented that the targeted review would "prolong the time required for production" past the previous estimate of the second week of May, and HRO would therefore need until May 25, 2022 based on the parties' agreement and understanding that HRO would be conducting targeted redaction of PII only. *See* ECF 83.

Plaintiffs' counsel informed HRO's counsel that at no point after the May 4 review or during the parties' multiple subsequent emails and phone calls did HRO state that it would be redacting all contextual information in the requested spreadsheets. Llaguno Aff. ¶ 26; Exh. J. Plaintiff's counsel further explained that "[i]t is clear that after Plaintiff set forth the arguments in her Motion for Leave to Amend to add a claim for fraud for Defendant's systemic bad faith business practices evidenced in these documents, that HRO is now attempting to prejudice Plaintiff's prosecution of her case by withholding indisputably probative information. *Id.,* ¶ 27. HRO did not respond to Plaintiffs' correspondence. *See id.*

HRO's eleventh hour withholding of highly probative information is wholly contrary to the months of meet and confer conversations and agreements between the parties and plainly reflects bad faith delay and gamesmanship by HRO. HRO continued to produce documents after the agreed upon May 25 deadline in the parties Joint Motion on May 27 and June 1, 2022. Llaguno Aff. ¶ 29; Exh. I (June 1 and May 27 production). HRO also produced a privilege log which

asserted for the first time that HRO was withholding relevant information on the grounds that they are "confidential business records." *See* Llaguno Aff. ¶ 29; Exh. K (HRO's privilege log served June 1, 2022). At no time did HRO assert any privilege nor any objection in its discovery responses that it would be withholding documents on the grounds that they were privileged "confidential business records." *See* Llaguno Aff. ¶ 30; Exh. L (HRO's initial discovery responses served on March 14, 2022); Exh. M (HRO's Third Supplemental Responses, served on May 31, 2022).

As set forth in the briefing for Plaintiff's Motion for Leave to Amend (ECF 68, 85, 85-1), even without a claim for fraud, these highly probative documents establish systemic bad faith by HRO and are directly relevant to, without limitation, Plaintiff's claims for breach of the implied covenant of good faith and fair dealing. *See* Exh. N (exemplar documents produced with blanket redactions and their corresponding emails).

Considering the parties' extensive meet and confer efforts, Mr. Heiskell's recent statements reneging on the parties' agreements is clearly an attempt to evade production of highly probative evidence, and an abuse of the discovery process that severely prejudices Plaintiff's preparation for dispositive motions and trial.

### III. LEGAL STANDARD

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any potential claims or defenses. Fed. R. Civ. P. 26(b). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. Evidence is relevant if "it **has any tendency** to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added).

Under Rule 34, "[a] party must produce documents as they are kept in the usual course of business." Fed. R. Civ. P. 34(b)(2)(E)(i). "Redaction of documents produced in discovery to exclude non-responsive or otherwise irrelevant information is generally disfavored*." Mid-State Auto., Inc. v. Harco Nat'l Ins. Co*., 2:19-CV-00407, 2020 WL 1488741, at *7 (S.D.W. Va. Mar. 25, 2020). "Unless the redaction…is a similarly minor redaction to protect an individual's privacy, **documents should not be redacted to omit-nonresponsive information**. *Id.* (emphasis added).

Pursuant to Rule 37, "a party may move for an order compelling disclosure or discovery" when a party "fails to produce documents or fails to respond that inspection will be permitted…as requested under Rule 34." Fed. R. Civ. P. 37(a). "An evasive or incomplete disclosure, answer, or response, must be treated as a failure to disclose, answer, or respond. *Id.* The court may impose appropriate sanctions for a party's failure to provide information in response to requests for production. *See* Fed. R. Civ. P. 37(a)-(d).

IV.　**ARGUMENT**

A. **HRO Should Be Compelled to Produce Relevant Documents Without Improper Blanket Redactions.**

The Court should compel HRO to produce the email attachments at issue without improper wholesale redactions. "[R]edaction of documents produced in discovery to exclude non-responsive or otherwise irrelevant information is generally disfavored." *Mid-State Auto., Inc. v. Harco Nat'l Ins. Co.*, 2:19-CV-00407, 2020 WL 1488741, at *7 (S.D.W. Va. Mar. 25, 2020) (citing *Wellin v. Wellin,* 2:13-CV-1831-DCN, 2015 WL 5781383, at *5 (D.S.C. Sept. 30, 2015) (collecting cases); *David v. Alphin*, No. 3:07-cv-11, 2010 WL 1404722, at *7–*8 (W.D.N.C. Mar. 30, 2010) (compelling disclosure of unredacted documents finding that "the Federal Rules provide no procedural device for unilateral redaction by a party and it is a procedure that is not favored" and further stating that "the court is troubled by wholesale unilateral redaction of documents")). "[O]ne-sided redaction of information, even if the information is irrelevant, "breed[s] suspicions[] and ... may deprive the reader of context." *Mid-State Auto, Inc.* 2020 WL 1488741, at *7 (citing *Wellin*, 2015 WL 5781383, at *5 (quoting *In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009)). Unless the redaction is authorized by Federal Rule of Civil Procedure 5.2(a)[3] or Local Rule of Civil Procedure 5.2.1, or is a similarly

---

[3] Rule 5.2 provides procedures for redacting "an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number." Fed. R. Civ. 5.2. Likewise, Local Rule 5.08 provides that social security numbers, names of minor children, dates of birth, financial account numbers, and home addresses in criminal cases be redacted.

minor redaction to protect an individual's privacy, **documents should not be redacted to omit non-responsive information**. *Mid-State Auto, Inc.* 2020 WL 1488741, at *7 (citing *David*, 2010 WL 1404722, at *7) (emphasis added).

"[R]edaction is, after all, **an alteration of potential evidence** [and] [t]he Federal Rules sanction only very limited unilateral redaction. *Alphin*, 2010 WL 1404722, at *7 (emphasis added) (citing *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476, f.n.1 (E.D.Cal. Feb. 3, 2010)); *see also id.* ("[I]f you make unwarranted redactions, a court may well award sanctions for non-disclosure of requested evidence up to and including default/dismissal based on a seeming bad faith hiding of information.").

HRO's wholesale deletion of relevant information should not be permitted by the Court. Blanket redaction is improper even when the information is irrelevant[4]. However, here, Plaintiff has already established the probative nature of the documents at issue. *See* ECF 68, 85, 85-1 (asserting that the unredacted documents evidence Defendants' systemic bad faith business practices). HRO's unilateral redactions are indisputably "an alteration of potential evidence" as the blanket deletion of cells in the Excel spreadsheets necessarily alters the formulas and data in other affected spreadsheet cells. *See* Exh. N; *Alphin*, 2010 WL 1404722, at *7. For example, HRO deleted hundreds of rows of data for "unpaid" and "past due" leases. *See* Exh. N, p. 1. As a result of the deletions, the corresponding cells that are supposed to show the total amounts that are "unpaid" or "past due" indicate a calculation error or are blank. *See id.*, pp. 2-4 (blank totals or cells stating "#REF!" indicating data has been deleted). These amounts are plainly probative of Plaintiff's claims of bad faith, particularly in light of the email stating "we have 400+ payments past due…"). *See id.* p. 9. In another document, the "key" for the spreadsheet indicates color coded categories for lease status, including "yellow" for "Past Due/Due within next 2 weeks but Curative has marked as 'Pending Title.'" *Id.,* p. 10. As a result of HRO's deletions, the color codes are removed entirely from the spreadsheet. *See id.* Moreover, the deleted data provides needed

---

[4] As discussed in detail above, the parties had already previously agreed to redaction of personally identifying information such as third party names and tax parcel numbers.

contextual information, as Plaintiff is unable to determine the other alternative categories and data tags in the deleted cells. For example, in some spreadsheets, Plaintiff's property is tagged as "Must Have" for "Land Use Category" and "Able to Pay: No." *Id.*, p. 6. Without the data from other cells, one cannot determine what the other "land use categories" are, the amount of properties that were marked "Able to Pay: No," or "past due" and whether there were any payments that Defendants were indeed able to pay. *See also e.g.,* Exh. N (unknown alternative categories for "Curative Requirements Detail," "Title/Curative Comments," "Contract Status", etc.).

HRO's deletions materially alter the responsive evidence and deprive Plaintiff of probative information. HRO's unilateral wholesale redactions are entirely improper and HRO should be compelled to produce the documents without unilateral deletions.

> **B. HRO's Withholding of Probative Information is Improper as The Agreed Protective Order Adequately Protects Production of "Confidential" Business Information in Discovery.**

Moreover, HRO's blanket redaction of relevant information should not be permitted as there is already a Protective Order in place specifically detailing the procedures for production of confidential information. *See* ECF 57. "Redactions are especially discouraged in cases where, as here, a confidentiality order exists that renders the redactions unnecessary." *Wellin v. Wellin*, 2:13-CV-1831-DCN, 2015 WL 5781383, at *5 (D.S.C. Sept. 30, 2015) (compelling unredacted documents explaining that "redaction should be unnecessary in this case, as the [] confidentiality order allows parties to designate documents containing 'sensitive personal information' as confidential"); *see also e.g., Haught v. Louis Berkman LLC*, 417 F. Supp. 2d 777, 787 (N.D.W. Va. 2006) ("the protective order adequately protects their interest in the confidential documents"); *In re MI Windows*, 2013 WL 268206, at *3 ("[T]he concerns upon which [defendant] bases its need to redact are alleviated by the confidentiality order that is already in place, which 'prevents non-litigants from viewing sensitive information.'"); *Alphin*, 2010 WL 1404722, at *7 ("[P]rotective orders are available to shield irrelevant, but important-to-keep-confidential information, and unless the protective order permits partial production, a document should be

13

produced in its entirety."); *id.* (compelling production of unredacted documents because "this litigation has a protective order in place that prevents non-litigants from viewing sensitive information.") (citing *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476, at *2 n.1 (E.D.Cal. Feb. 3, 2010)); *Bowers v. Mortg. Elec. Registration Sys., No.* CIV.A. 10-4141-JTM, 2011 WL 3328524, at *4 (D. Kan. Aug. 2, 2011) ("A protective order can maintain the confidential nature of this information while allowing efficient discovery, a worthwhile objective in this case.");); *In re State St. Bank & Trust*, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) ("In the case at bar, the stipulated protective order makes it unnecessary to redact any portion of a document on the ground that the portion is non-responsive and irrelevant.").

Here, HRO's sole basis for withholding relevant information is its assertion that the redacted information is "confidential business information." *See* Exh. K (HRO's June 1, 2022 privilege log). The Agreed Protective Order entered by the Court specifically issues procedures for producing confidential business information in discovery, and does <u>not allow redaction</u>. *See* ECF 57. As the Agreed Protective Order adequately protects any interest HRO purports to have in confidential business information and does not permit redaction, the Court's Order should be followed[5].

Accordingly, HRO should be compelled to abide by the Court's Protective Order and produce documents without redactions.

### C. **HRO Waived its Objections as to Confidential Business Information by Not Asserting the Privilege in Its Discovery Responses.**

Further still, HRO waived its ability to withhold responsive information by failing to assert any privilege or objection based on confidential business information in its discovery responses. It is black letter law that failure to timely serve responses waives the right to assert objections. *See* 8B FED. PRAC. AND PROC. § 2173 (3d ed. 2020) ("failure to object within the time fixed by the rule is a waiver of objections"); *Ayers v. Continental Cas. Co.*, 240 F.R.D. 216, 222 (N.D.W. Va., 2007) ("the failure to raise an objection within the time period allowed by the Rules will result in

---

[5] Plaintiff previously proposed production of the unredacted documents with confidential designations pursuant to the Agreed Protective Order, but HRO refused. *See* Llaguno Aff. ¶ 16.

waiver of the objection") (citing *Antico v. Honda of Camden*, 85 F.R.D. 34, 35 (E.D.Pa.1979) ("failure to object to a discovery request in a timely fashion constitutes a waiver of the objections"); *see also e.g., Arnold v. Ford Motor Co.*, 3:05CV12, 2006 WL 8442085, at *3 (N.D.W. Va. Jan. 17, 2006) (stating that "[a]ll objections must be stated with specificity and any objection not raised is waived" and holding failure to timely object waived objections); *Adams v. Rush Trucking Corp.*, 3:06-CV-65, 2007 WL 9729119, at *4 (N.D.W. Va. Jan. 8, 2007) (same); *Canton v. Green Tree Services, LLC*, 2007 WL 2220281 (N.D.W. Va. Aug. 2, 2007) (holding defendant waived any attorney client privilege or work product protection); *Gregory v. Forest River, Inc.*, 3:08-CV-73, 2008 WL 11342618, at *4 (N.D.W. Va. Sept. 26, 2008) (failure to timely respond resulted in waiver of objections).

Here, the parties extensively discussed the business records at issue as far back as February 2022. *See* Llaguno Aff., ¶¶ 4-5. HRO never asserted any privilege or objection to the production of these documents until HRO's eleventh hour privilege log. *See* Exh. K. Indeed, HRO's Third Supplemental Responses to Plaintiffs' Requests for Production of Documents that HRO served on May 25, 2022 did not assert any such privilege or objections. Accordingly, HRO waived its right to withhold responsive information based on purported confidentiality.

### D. **Plaintiff Will be Prejudiced Absent HRO's Production as the Redacted Information is Highly Probative to Plaintiff's Claims of Bad Faith.**

HRO cannot dispute that the documents and information at issue are directly relevant to Plaintiff's claims that Defendants breached of the duty of good faith and fair dealing[6]. Plaintiff asserts that Defendants' systemic bad faith treatment of landowners is evidenced in the email attachments and Excel spreadsheets at issue. *See* ECF 85, 85-1. Unilateral redaction is improper even where the information is irrelevant. *See e.g., Medtronic Sofamor Danek, Inc. v. Michelson*, 2002 WL 33003691, at *4 (W.D.Tenn. Jan. 30, 2002) ("A 'mere blanket averment' by counsel that unidentified documents may contain irrelevant material is not sufficient to permit redaction)

---

[6] Indeed, after HRO's production, Plaintiff sought leave to amend the operative complaint to add a claim for fraud based on Defendants' systemic bad faith business practices revealed in their business records. Plaintiff's Motion for Leave to Amend is pending before the Court. *See* ECF 68, 85.

(citing *United States v. Davis*, 1988 WL 96843, at *3 (S.D.N.Y. Sep. 13, 1988)). However, here, the documents at issue are plainly relevant to Plaintiff's claims. *See* ECF 85-1 (detailing information in exemplary documents). Absent such highly probative evidence, Plaintiff will be severely prejudiced in her prosecution of her claims.

HRO's dilatory conduct suggests that it is attempting to withhold highly probative information to prevent Plaintiff from having her claims against HRO heard on the merits. Such improper withholding of relevant information is an abuse of the discovery process that should not be tolerated, and the Court should compel HRO's production of the unredacted business records.

### E. HRO Repeatedly Represented that it Would Only Redact Personally Identifying Information and its Bad Faith Gamesmanship Warrants Sanctions.

HRO's conduct is precisely the type of gamesmanship prohibited by the discovery rules. *See e.g., Fisher v. Baltimore Life Ins. Co.*, 235 F.R.D. 617, 622 (N.D.W. Va. 2006) ("Gamesmanship to evade answering as required is not allowed."); *Vasoli v. Yards Brewing Co.*, LLC, CV 21-2066, 2021 WL 5045920, at *2 (E.D. Pa. Nov. 1, 2021) (courts should not "reward attempts to circumvent the collaborative process envisioned by the discovery rules [which] would run contrary to their instruction that this kind of gamesmanship should instead be met with sanctions."); *Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir.1988) ("The rules of discovery were not designed to encourage procedural gamesmanship, with lawyers seizing upon mistakes made by their counterparts in order to gain some advantage.").

#### 1. HRO's Conduct Warrants Sanctions Under Rule 37(a) and (c).

HRO's dilatory tactics and failure to disclose in good faith has clearly prejudiced Plaintiff, warranting sanctions under Rule 37. *See* Fed. R. Civ. P. 37(a) ("If a party fails to make a disclosure…and other party may move to compel disclosure and for appropriate sanctions"); Fed. R. Civ. P. 37(c)(1)(C) ("If a party fails to provide information….the court…may impose other appropriate sanctions"). Permitting HRO's improper withholding of material information would achieve nothing more than to reward HRO's bad faith gamesmanship in evading discovery, and

would result in severe prejudice to Plaintiffs. Plaintiff has been forced to incur substantial expense and unnecessarily waste the judicial resources of this Court due to HRO's bad faith conduct throughout discovery. As such, the Court should levy sanctions against HRO for their discovery abuses, including without limitation, denying any dispositive motion made by HRO as Plaintiff cannot fairly oppose absent HRO's production, and an award of the reasonable expenses and attorney's fees caused by HRO's conduct. *See* Fed. R. Civ. P. 37.

### 2. HRO's Improper Redaction Warrants Sanctions for Failure to Comply with a Court Order Under Rule 37(b).

Not only is HRO's evasive conduct sanctionable under the discovery rules, but HRO's refusal to abide by Court's Agreed Protective Order warrants sanctions under Rule 37(b) for failing to comply with a Court Order. *See* Fed. R. Civ. P. 37(b)(2)(A) ("If a party of a party's officer…fails to obey an order to provide or permit discovery, the court where the action is pending may issue further just orders. The Court's Agreed Protective specifically issues the procedures for producing confidential information in discovery and does not permit redactions. *See* ECF 57. Rather, parties are directed to designate such information as confidential under the terms of the Protective Order and produce the information in its entirety. *Id.* HRO's refusal to abide by the terms of the Court's Protective Order justifies sanctions under Rule 37(b). Plaintiff expended significant time and expense throughout the discovery process to cooperate with HRO, and has now been prejudiced by HRO's gamesmanship.

Accordingly, Plaintiff respectfully requests that the Court compel HRO to produce the documents at issue without improper blanket redactions, deny any attempt by HRO to move for summary judgment against Plaintiff absent their production of probative documents, and for an award of reasonable expenses, including attorney's fees that Plaintiff was forced to incur as a result of HRO's conduct.

### F. The Case Schedule Should Be Extended to Allow Resolution of the Discovery Dispute.

Plaintiff should not be prejudiced by its good faith attempts throughout this litigation to cooperate with HRO in discovery. Plaintiff relied in good faith on HRO's representations that it

would complete its production of documents by May 25, 2022 without blanket redactions and has been prejudiced by HRO's eleventh hour withholding of responsive information and late production. *See, supra* § II(A)-(F); ECF 83 (Joint Motion stating HRO "is still in the process of producing electronically stored information and anticipates production to be completed by May 25, 2022"). Indeed, the parties stipulated and agreed that "Plaintiff cannot conduct the Rule 30(b)(6) deposition of [HRO's] corporate representative until production is completed" and Plaintiff has been unable to do so due to HRO's withholding of probative information. *See* ECF 83; *see also In re Tara Retail Grp., LLC*, 634 B.R. 509, 523 (Bankr. N.D.W. Va. 2021) ("a party is bound by the admissions of his pleadings" including "formal concessions in the pleadings, or stipulations by a party or its counsel") (citing *Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989) and *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264 (4th Cir. 2004)); *Walton v. Wal-Mart Stores, Inc.*, 108 F.3d 1375 (4th Cir. 1997) ("[A] party cannot subsequently take a position contradictory of, or inconsistent with, his pleadings."). Thus, good cause exists to extend the case schedule to allow for resolution of this dispute.

Absent HRO's production of complete and unredacted documents, Plaintiff is unable to fairly prepare for the upcoming dispositive motions deadline and for trial. Plaintiff will be undeniably prejudiced if the case schedule is not extended to allow for resolution of this discovery dispute. Plaintiff respectfully requests that the Court permit a brief extension of the case schedule to allow for resolution of this Motion and HRO's production of documents.

V. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court (i) compel Defendant American Petroleum Partners Operating, LLC n/k/a High Road Operating, LLC to produce the responsive documents requested by Plaintiff (Exh. E filed herewith) and identified in HRO's Privilege Log as "confidential business information" (Exh. K filed herewith ) without redactions, (ii) extend the case schedule to allow for resolution of this Motion and HRO's production, (iii) levy discovery sanctions against HRO including denial of any dispositive motion

brought against Plaintiff, and (iv) and award the reasonable expenses and attorney's fees that Plaintiff incurred as a result of HRO's conduct.

Dated: June 3, 2022

                              Respectfully submitted,

                              */s/ Joy D. Llaguno*
                              David C. Hook (WV I.D. No. 10490)
                              Joy D. Llaguno (WV I.D. No. 14170)
                              **HOOK & HOOK PLLC**
                              430 East Oakview Drive, Suite 101
                              Waynesburg, PA 15370
                              Phone: 724-802-7144
                              Fax:    724-802-7959

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, and notice will be sent the registered participants as identified on the Notice of Electronic Filing.

*/s/ Joy D. Llaguno*
Joy D. Llaguno
